Marko R. Zoretic
marko.zoretic@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main St., 14th Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile:  (949) 760-9502

Attorneys for Movant
ADVANCED CLUSTER SYSTEMS, INC.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADVANCED CLUSTER SYSTEMS, INC.,<br><br>　　　　　Movant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　　　Respondent. | Case No.:  7:22-mc-224<br><br>**MEMORANDUM IN SUPPORT OF ADVANCED CLUSTER SYSTEMS, INC.'S MOTION TO COMPEL INTERNATIONAL BUSINESS MACHINES COPORATION'S THIRD-PARTY PRODUCTION AND DEPOSITION**<br><br>Date:  TBD<br>Time:  TBD<br>Place:  TBD |

## I. INTRODUCTION

This is a patent infringement lawsuit. Advanced Cluster Systems, Inc. ("ACS") sued NVIDIA Corporation, NVIDIA Singapore Pte. Ltd., and NVIDIA International, Inc. (collectively "NVIDIA") in the District of Delaware alleging infringement of U.S. Patent No. 10,333,768, including allegations of induced patent infringement. ACS alleges, *inter alia*, that NVIDIA's interaction with and joint marketing of NVIDIA products through NVIDIA's Partner Network (the "NPN") is evidence of NVIDIA's induced infringement. International Business Machines Corporation ("IBM") is a partner in the NPN.

To pursue its case of induced infringement against NVIDIA, ACS sought discovery from IBM over two months ago relating to (1) IBM's interaction with NVIDIA to develop, market, and sell IBM products incorporating NVIDIA products that infringe the ACS patent and (2) IBM's manufacture, sale, and testing of the products accused of infringing ACS patents. As a result of ACS's extensive efforts to compromise and narrow its discovery requests, ACS agreed that that IBM may satisfy the document subpoena by the production of (1) technical information sufficient to describe the IBM systems accused of infringement; (2) documents related to NVIDIA's certification/qualification of IBM to sell systems containing NVIDIA GPUs (graphical processing units); and (3) a financial summary of each IBM systems (units and revenue per month). To date, despite ACS's extensive efforts to compromise and narrow its discovery requests, IBM has produced only five publicly available technical documents (which are insufficient), has not produced the financial summary it agreed to produce, has not identified any date for a deposition of an IBM witness, and has not committed to any timeline for doing so. As of August 17, 2022, IBM represented only that it was still gathering the requested financial information and is continuing to look into NVIDIA's qualification of IBM systems.

Given that fact discovery closes on August 18, 2022, ACS cannot continue to wait for IBM to produce the requested documents and make a witness available for deposition. Thus, ACS now moves to compel discovery from IBM.

## II. FACTUAL BACKGROUND

On June 6, 2022, ACS served a subpoena on IBM seeking production of ten categories of documents. (Zoretic Decl., Exs. 1 and 2.) Request Nos. 1–3 seek documents and communications related to the parties, patents, or accused products in the ACS v. NVIDIA litigation. (*Id.*, Ex. 1 at 12.) Request No. 4 seeks contracts between IBM and NVIDIA regarding IBM's participation in the NPN. (*Id.*) Request Nos. 5–6 seek documents and communications exchanged between IBM and NVIDIA regarding NVIDIA products. (*Id.* at 13.) Request Nos. 7 and 8 seek IBM financial records of (1) NVIDIA products purchased by IBM or (2) NVIDIA products made, used, sold, offered for sale in, or imported into, the United States by IBM. (*Id.*) Request Nos. 9–10 seek documents and communications between IBM and NVIDIA regarding the design and operation of specific IBM systems qualifying as accused products in the ACS v. NVIDIA litigation and related to the sales data from Request Nos. 7–8. (*Id.*)

Also on June 6, 2022, ACS served a subpoena on IBM seeking testimony on thirteen topics. (Exs. 3–4.) Topic Nos. 1–3 relate to knowledge of, and communication with NVIDIA about plaintiff ACS, patents, or accused products in the ACS v. NVIDIA litigation. (*Id.*, Ex. 3 at 19–20.) Topic No. 4 relates to any contracts between IBM and NVIDIA regarding IBM's participation in the NPN. (*Id.*) Topic Nos. 5–6 relate to communications exchanged between IBM and NVIDIA regarding NVIDIA products. (*Id.*) Topic Nos. 7 and 8 relate to IBM's financial records of (1) NVIDIA products purchased by IBM or (2) IBM products made, used, sold, offered for sale in, or imported into, the United States by IBM. (*Id.*) Topic Nos. 9–10 relate to documents and

communications between IBM and NVIDIA regarding the design and operation of IBM products qualifying as accused products in the ACS v. NVIDIA litigation and related to the sales data from Request Nos. 7 and 8. (*Id.* at 20–21.)  Topic Nos. 11–13 relate to the authenticity, meaning, and collection of documents produced in response ACS's subpoena to produce documents.  (*Id.* at 21.)

On June 21, 2022, IBM responded with objections to both of ACS's subpoenas.  (Zoretic Decl., Ex. 5.)  IBM agreed to produce documents in response to Request Nos. 3 and 8 and agreed to meet and confer regarding the scope of Request Nos. 4–6 and 10.  For the subpoena Topics, IBM objected to each Topic, but did not explicitly state whether it was refusing to provide a witness for any particular Topic.  (*Id.*)

IBM's objections included several repeated themes.  IBM claimed the requested documents and communications were overbroad and seeking discovery not reasonably necessary or important to the resolution of the claims or defenses (Request Nos. 1–9); and the requested documents are more reasonably available and obtained from other sources, including through party discovery (Request Nos. 2–7, 9, and 10). (Ex. 5.)

On July 20, 2022, the parties conducted a meet and confer to discuss IBM's objections and responses to the subpoenas. (Zoretic Decl., ¶ 7.)  In the interest of compromise and agreement to narrow the scope of discovery sought by ACS, ACS agreed to specifically identify the relevant IBM systems ("IBM Systems") for which it was seeking discovery, discussed the types of documents it was most interested in (i.e., technical documents describing the IBM Systems and documents related to NVIDIA's involvement in developing the IBM Systems), and agreed to receive a summary of financial information concerning the IBM Systems. (*Id.*; Ex. 6 at 1.)  On July 28, 2022, the parties conducted a follow-up meet and confer to further discuss the types of documents ACS was most interested in and ACS's request for a deposition of an IBM witness.


(*Id.*, ¶ 8.) IBM stated that they would produce an initial set of documents the subsequent week and would look into who might be the IBM witness for a deposition. (*Id.*)

On August 2, 2022, IBM produced five technical documents. (Zoretic Decl., ¶ 9; Ex. 7 at 3.) On August 5, 2022, ACS followed up with IBM to determine when IBM expected to produce additional documents that IBM agreed to produce and to follow up on determining a time when an IBM witness would be available for deposition. (Ex. 7 at 2.) Not hearing anything further from IBM, on August 9, 2022, ACS followed up on its August 5, 2022 email. (*Id.* at 1.) IBM responded that they expected to receive the "volume" data in a day or two and "push out without delay." (*Id.*)

On August 9, 2022, ACS requested IBM to confirm as soon as possible when an IBM witness will be available for deposition on August 16, 17, or 18. (*Id.*) The parties conducted a further meet and confer the next day, on August 10, 2022. (*Id.*, ¶ 10.) ACS agreed that IBM may satisfy the document subpoena by the production of (1) technical information sufficient to describe the IBM Systems; (2) documents related to NVIDIA's certification/qualification of the IBM Systems; and (3) a financial summary of the IBM Systems (units and revenue per month). (*Id.*)

On August 15, 2022, ACS followed up on the August 10, 2022 meet and confer. (Ex. 8 at 1.) IBM responded on August 17, 2022 and represented only that it was still gathering the requested financial information and that it is continuing to look into NVIDIA's qualification of IBM Systems. (*Id.*)

Thus, to date, despite ACS's extensive efforts to compromise and narrow its discovery requests, IBM has produced only five publicly available technical documents, has not produced any documents related to NVIDIA's certification/qualification of the IBM Systems, has not produced the financial summary it has agreed to produce, has not identified any date for a deposition of an IBM witness, and has not committed to any timeline for doing so.

Fact discovery closes on Aug. 18, 2022.  (Ex. 9.)

### III.  ARGUMENT

IBM should be compelled to produce (1) technical information sufficient to describe the IBM Systems; (2) documents related to NVIDIA's certification/qualification of the IBM Systems; and (3) a financial summary of each of the IBM Systems (units and revenue per month) from June 25, 2019 to the present, each of which it has already agreed to produce.  Additionally, IBM should be compelled to provide a witness to authenticate and discuss these documents.

A.  **The Court Should Compel IBM To Produce The Technical And Certification/Qualification Related Documents It Agreed To Produce**

ACS alleges that NVIDIA infringes indirectly by inducing its NPN partners, including IBM, to make, use, sell, or offer for sale within the United States and/or import into the United States server products that incorporate NVIDIA components, and that directly infringe the asserted patent in the ACS v. NVIDIA litigation.  (Ex. 10 at 27.)  Thus, documents describing the IBM Systems, including documents related to NVIDIA's certification/qualification of the IBM Systems containing NVIDIA GPUs (e.g., documents concerning the testing performed by IBM to receive NVIDIA certification/qualification), are relevant to establishing the direct infringement portion of ACS's induced infringement allegations and are responsive to Request Nos. 1, 2, 9, and 10.  *See, e.g., Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[l]iability for induced infringement must be predicated on direct infringement"); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.")

IBM agreed to produce technical information for the IBM Systems and documents related to NVIDIA's certification/qualification of IBM to sell the IBM Systems. (Zoretic Decl., ¶ 8; Ex. 8 at 1.) To date, however, IBM has produced only five public documents. The five documents, however, are not sufficient because (1) they do not describe certain key software components relevant to infringement in this case, e.g., GPU driver code and GPU firmware, and (2) are not responsive to the certification/qualification related documents IBM agreed to produce. Thus, at a minimum, the Court should compel IBM to fully comply with its agreement to produce sufficient technical documents and certification/qualification related documents.

B.      **The Court Should Compel IBM To Produce The Financial Summary It Agreed To Produce**

The sales information sought by ACS—responsive to Request Nos. 7 and 8—is relevant to showing direct infringement (e.g., sales) that the induced infringement allegations against NVIDIA are predicated on. It is also relevant to the commercial success factor in the *Georgia Pacific* analysis for determining a reasonable royalty. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) ("8. The established profitability of the product made under the patent; its commercial success; and its current popularity. . . . 11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use."). Further, it is relevant to commercial success in connection with secondary considerations of non-obviousness. *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1361 (Fed. Cir. 1999) (affirming that "sales figures alone are also evidence of commercial success" in a nonobviousness analysis).

IBM agreed to produce a financial summary for each of the IBM Systems, including units and revenue per month from June 25, 2019, but states that it is still in the process of gathering the promised information. (Zoretic Decl., ¶7; Ex. 5 at 5; Ex. 8 at 1.) Thus, at a minimum, the Court should compel IBM to produce the financial summary it promised to produce.

C.   **The Court Should Compel IBM To Provide A Witness For Deposition**

The Court should also compel IBM to provide a witness that is able to authenticate documents produced by IBM and explain the content and meaning of those documents as requested in, at least, Topics 7–12. Such testimony is relevant for the same reasons discussed above. The information sought by the deposition is proportional to the needs of the case, at least in view of the narrow scope of documents that IBM has agreed to produce. Moreover, the information sought by the deposition is unique to IBM, e.g., authentication of documents produced by IBM, testimony concerning IBM Systems, steps taken by IBM in the certification/qualification process, and IBM's financials.

## IV.   CONCLUSION

ACS respectfully requests that the Court order IBM to produce the documents it agreed to produce and provide a witness to testify.

Dated:  August 18, 2022              Respectfully submitted,

*/s/ Marko R. Zoretic*
Marko R. Zoretic
KNOBBE MARTENS OLSON & BEAR LLP
2040 Main Street, 14th Floor
Irvine, CA 92614-3641
Tel.: (949) 760-0404
Fax: (949) 760-9502

*Attorneys for Movant*
ADVANCED CLUSTER SYSTEMS, INC.

56152652